1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8

9   William W. Castle,                    )   No. CV 08-1036-PHX-MHM (MHB)
                                          )
10            Petitioner,                 )   **REPORT AND RECOMMENDATION**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Dora B. Schriro, et al.,              )
13                                        )
              Respondents.                )
14                                        )
                                          )
15  _____ )

16  TO THE HONORABLE MARY H. MURGUIA, UNITED STATES DISTRICT JUDGE:

17      This matter comes before this Court upon consideration of a *pro se* Petition for Writ of

18  Habeas Corpus, filed on June 2, 2008, by Petitioner William W. Castle, who is confined in

19  the Arizona State Prison. (Doc. #1; Memorandum in Support, Doc. #3.)  Respondents filed

20  an Answer on September 19, 2008 (Doc. #13), and Petitioner filed a Traverse/Reply on

21  October 29, 2008 (Doc. #28).

22                              **BACKGROUND**

23      Petitioner was charged in the Maricopa County Superior Court, State of Arizona, in an

24  Indictment alleging one felony count of Fraudulent Schemes and Artifices and one felony

25  count of Theft, both crimes allegedly occurring between July 31, 2003 and October 20, 2004.

26  (Doc. #13, Exh. A.)  The State filed an allegation of four prior felony convictions.  (Doc.

27  #13, Exh. B.)  Petitioner signed a plea agreement on March 22, 2005, in which he agreed to

28  plead no contest to Count Two, the Theft count, a class 2 felony.  (Doc. #13, Exh. C.) The

plea agreement set forth the statutory range of prison sentence for the offense: a presumptive sentence of 5 years, a minimum sentence of 4 years (3 years if the trial court finds exceptional circumstances) and a maximum sentence of 10 years (12.5 years if the trial court finds exceptional circumstances).  (Id., at 1)  The parties stipulated that Petitioner would serve no less than 5, and no more than 10 years in the Arizona Department of Corrections. (Id., at 2.) The State agreed that the sentence would run concurrent with any term of incarceration ordered in his Fraudulent Scheme conviction, case number 2005-006519-001DT, another case pending against Petitioner.[1]  The State agreed to dismiss Count One of the Indictment (also a Fraudulent Scheme charge), and its allegation of priors at sentencing. (Id.)

Petitioner also consented in his plea agreement to "judicial fact-finding by preponderance of the evidence as to any aspect or enhancement of sentence," and that "[i]n making the sentencing determination, the court [would] not [be] bound by the rules of evidence."  (Id., at 3.)  He also acknowledged that by pleading guilty, he was waiving his "right to a determination by a jury of any fact used to impose a sentence within the sentencing range," and that by signing the plea agreement he acknowledged having read and approved all of the paragraphs in the agreement.  (Id., at 4.)

Petitioner changed his plea before the court on March 2, 2005.  (Doc. #13, Exh. D.) During these proceedings, the trial court advised Petitioner of his right to have a jury determine aggravating factors to enhance his prison sentence, and advised him that by pleading guilty and giving up that right he was consenting to the sentencing judge finding those factors by a preponderance of the evidence. (Id., at 2-3.) The trial court also confirmed that Petitioner had read his plea agreement, had gone over it carefully, understood it and agreed with all of its terms.  (Id., at 6-7.)  Petitioner denied that "anyone [had] promised anything. . . that's not written down in [the] agreement." (Id., at 7.)  The trial court then

---

[1]Petitioner does not raise any claims relating to the fraudulent schemes case, although he entered his plea in that case at the same time as he entered his plea in the theft case, and was sentenced simultaneously.

1  advised Petitioner of the sentencing range, and of the agreement that he had with the State
2  that he would be sentenced to between  five and ten years in prison.  (Id., at 11.)

3  Although Petitioner entered a no contest plea, the trial court advised him that "pleading
4  no contest is no different than pleading guilty in so far as there will be a conviction on your
5  record and you will be sentenced exactly as if you had entered a guilty plea."  (Id., at 13.)
6  The State then set forth the factual basis for the no contest plea: "between July 31st, 2003 and
7  October 20th, 2004, in Maricopa County, [Petitioner], without lawful authority, knowingly
8  converted for an unauthorized term or used services of property entrusted to another.  This
9  conduct occurred when he negotiated funds in excess of $25,000 from potential real estate
10 investors in a transaction, again, within Maricopa County."  (Id., at 14.)

11 A presentence report was prepared by an officer of the Maricopa County Probation
12 Department.  (Doc. #13, Exh. F.)  The officer recommended that Petitioner be sentenced to
13 a term greater than the presumptive, and that the sentences in the two cases be ordered to run
14 consecutively.[2]  (Id., at 6.) Letters from the victims were attached to the report describing
15 their financial loss, the loss of their retirement savings, and the emotional harm they suffered.
16 (Id., at 16-20.)  Petitioner submitted a Sentencing Memorandum, character reference letters,
17 a report by a defense investigator detailing other financial transactions entered into by the
18 victims, and a psychological report. (Id., at 21-end.)

19 Sentencing proceeded on July 22, 2005.  At the beginning of the proceeding, the trial court
20 reconfirmed with Petitioner that he had waived in his plea agreement the right to a jury
21 determine whether aggravating factors support an aggravated sentence.  (Doc. #13, Exh. G,
22 at 4.)  The prosecutor then proceeded to argue for the maximum, 10-year sentencing:

23 There are a lot of aggravating factors in this case, Your Honor.  Basically, it's a fraud
   case.  It's a classic fraud case where a couple of old people have been bilked of their
24 savings.  The crime itself was very serious and deliberate and it was nearly immediate.
   It was less than a week after they got the money from the victims before they started
25 converting it to their own purposes.  It was of a reasonably large scale, $400,000, and

26

27 ──────────────────
   [2]The probation officer's recommendation was contrary to the provision of the plea
28 agreement that the two sentences would be run concurrently.

it involved repeated laundering of proceeds back and forth through corporations in Arizona and Nevada.

(Id., at 10.)

The prosecutor pointed out that Petitioner had manipulated the elderly victims by "using, among other things, a reprehensible pretext of being fellow Christians." (Id., at 15.) The prosecutor also noted Petitioner's five prior felony convictions. (Id., at 11.) In summary, the prosecutor asked that the court consider five statutory aggravating circumstances:

> There are a number of aggravating circumstances that apply in this case, Your Honor, that we would ask the Court to consider under 13 702. They include: Subsection 3, the value of the property taken; Subsection 4, the use of an accomplice; Subsection 5, committed for pecuniary gain; and especially Subsections 9 and 13, which are the physical, emotional and financial harm to the victims; and the fact that the victims are over 65.

(Id., at 21-22.)

The victims, Mr. and Mrs. Purcell, and Mr. McCain then addressed the court, detailing the emotional and physical harm[3], and financial loss they suffered as a result of the criminal acts of Petitioner. (Id., at 22-26.) Petitioner's counsel argued that the case should have been a civil matter, because it was essentially a "business deal that went bad,"and that Petitioner was remorseful. (Id., at 26-28.)

The trial court sentenced Petitioner to the aggravated term of 10 years in prison, finding as follows:

> These are senior citizens who have suffered emotionally and financially and physically because of the conduct of your client. They had developed a position of trust with him, and they trusted in him and believed in him and his brother, younger people. The subterfuge of attempting to bring in the Lord is reprehensible in the view of this Court. The purpose was greed , and I guess that comes under the category of pecuniary gain. The value was substantial, and obviously he couldn't have done it without accomplices. I believe your client was a principal planner and organizer of this effort. I don't believe it was by chance that it all happened. I think it was by design, and therefore, I believe the aggravated sentence of 10 years is appropriate . . .

(Id., at 36.)

---

[3]One of the victims indicated that he had "ended up with a pacemaker and a defibrillator," in part, because of the stress Petitioner caused him. The other victim indicated that he had lost 35 pounds and described waking up "in the dead of night . . . into a tension sweat" because he was so "obsessed" about being scammed out of his life savings. (Doc. #13, Exh. G, at 23-24.)

1   Petitioner filed a Notice of Post-Conviction Relief on October 14, 2005.  (Doc. #13, Exh.

2   I.)   In the Notice, Petitioner indicated that he did not want counsel to be appointed to

3   represent him and that he wanted to proceed "pro-per."  (Id., at 2.)  The trial court apparently

4   overlooked, or ignored this request and appointed counsel to represent Petitioner.  (Doc. #13,

5   Exh. J.)  On November 15, 2005, Petitioner filed a Waiver of Rights to Counsel, indicated

6   that he wanted to waive his right to counsel in his Rule 32 petition, and asked that advisory

7   counsel be appointed to assist him.  (Doc.#13, Exh. K.)  The trial court granted this request.

8   (Doc. #13, Exh. L.)

9   Petitioner then filed his petition for post-conviction relief, raising the following issues:

10  A.)  Ineffective Assistance of Counsel: Petitioner alleged that his attorney "told him
    that there was a factual basis for Theft, that his conduct embraced all the elements of
11  that offense, and that the indictment was sufficient as a matter of law."
    B.)  There was no factual basis for Petitioner's offense of conviction.
12  C.)  The indictment failed to state an offense and was insufficient as a matter of law.
    D.)  Petitioner's plea was not voluntary and intelligent because his attorney advised
13  him that "there was a factual basis for Theft, that his conduct embraced all the elements
    of the offense, and the indictment [was] sufficient."
14  E.)  The State breached the plea agreement by not fulfilling its promise to follow the
    sentencing recommendation contained in the presentence report.
15  F.)  Petitioner was sentenced on inaccurate information, namely that Petitioner did not
    show remorse and that his examining psychologist had not reviewed all of the
16  information in his case.
    G.)  The trial court used impermissible aggravating factors, namely the value of the
17  financial loss to the victims, and Petitioner's use of religion to gain the trust of the
    victims.
18  H.)  Petitioner was denied his constitutional right to an impartial judge.
    (Doc. #13, Exh. M, at 8-18.)
19
20  Petitioner eventually withdrew Claim A, Ineffective Assistance of Counsel.  (Doc. #13,

21  Exh. O, at 1.)  The trial court issued its decision on August 14, 2006, denying and dismissing

22  Petitioner's Rule 32 petition:

23  The Defendant's Rule 32 Petition for Post-Conviction Relief, the State's Response, and
    the Defendant's Reply having been duly considered by this Court, and the Court being
24  unable to find a factual or legal basis for concluding that a colorable claim has been
    presented. . . .
25  (Doc. #13, Exh. P.)

26  Petitioner then, on September 14, 2006, filed a Petition for Review to the Arizona Court

27  of Appeals, raising the following issues:

    A.)  Did the indictment fail to state an offense of Theft or Fraud?
28  B.)  Did Petitioner's conduct embrace all the elements of Theft?

1
C.)  Did the State breach the terms of the plea agreement?
D.)  Did the Court sentence Petitioner to a maximum term on the basis of inaccurate

2
information?
E.)  Did the trial Court use impermissible aggravating factors to sentence Petitioner?

3
F.)  Did the trial Court violate the Petitioner's constitutional right to be free of
involuntary servitude?

4
(Doc. #13, Exh. Q, at 2.)

5
On August 23, 2007, the Arizona Court of Appeals summarily denied review.  (Doc. #13,

6
Exh. R.)  The Arizona Supreme Court also summarily denied review on March 11, 2008.

7
(Doc. #13, Exh. U.)  While Petitioner's appeal was pending, on April 10, 2007, Petitioner

8
filed a second Notice of Post-Conviction Relief, alleging that a significant change in the law

9
occurred entitling him to relief, namely his right to have aggravating factors charged in the

10
indictment and found by a jury.  (Doc. #13, Exh. S, at 4-5.)  The trial court again denied

11
relief, explaining as follows:

12
The Defendant claims that <u>Blakely v. Washington</u>, 542 U.S. 296 (2004, constitutes a
significant change in the law that entitles him to relief.  <u>Blakely</u> was decided prior to

13
the Defendant's guilty plea and sentencing, and does not constitute a significant change
in the law under Rule 32.1(g).  In addition, the Defendant consented, in his plea

14
agreement, to judicial fact-finding for sentence enhancement.
(Doc. #13, Exh. T.)

15
On March 27, 2008, the Arizona Court of Appeals summarily denied review.  (Doc. #13,

16
Exh. V.) Petitioner did not file a petition for review to the Arizona Supreme Court.  (Doc.

17
#1, at 5.)

18
On June 2, 2008, Petitioner timely filed his petition for habeas corpus, raising five claims:

19
(1) the State violated due process by breaching the plea agreement;

20
(2) the state trial court improperly used "value" as an aggravating circumstance in
violation of due process and the double jeopardy clause;

21
(3) the trial court violated due process by sentencing Petitioner beyond the statutory
maximum based on inaccurate information;

22
(4) the state trial court violated due process and his right to the free exercise of religion
by using a "religious factor" at sentencing; and

23
(5) by relying on sentencing factors not alleged in the indictment, the state court
violated due process by denying Petitioner "a state created right involving a liberty

24
interest."
(Doc. #1, at 6-10.)

25
Respondents argue that Petitioner's claims 2-5 are procedurally defaulted, and claim one fails

26
on the merits.  (Doc. #13.)

27

28

**DISCUSSION**

**Exhaustion and Procedural Default**

A writ of habeas corpus may *not* be granted unless it appears that a petitioner has properly exhausted all *available* state court remedies.  28 U.S.C. § 2254(b)(1); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982).  As the Ninth Circuit has explained:

> The Supreme Court has held that if a "petitioner [has] failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," his claims are procedurally defaulted for purposes of federal habeas review.

Smith v. Baldwin, 466 F.3d 805, 811-12 (9th Cir. 2006) (citing, Coleman, 501 U.S. at 735 n. 1).

To properly exhaust state remedies, a petitioner must "fairly present" his claims to the highest state court, as mandated under state law, in a procedurally appropriate manner.  O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).  An Arizona petitioner sentenced *to less than the death penalty* may exhaust his federal claims by presenting them in a procedurally proper way to the Arizona Court of Appeals, either on direct appeal or in post-conviction proceedings, but he need not seek discretionary review in the Arizona Supreme Court.  Crowell v. Knowles, 483 F.Supp.2d 925, 928-30, 933 (D. Ariz. 2007) (following 1989 statutory amendment, Arizona Court of Appeals has jurisdiction over criminal convictions involving less than a death sentence); cf. Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999) (citing pre-1989 statutory amendment); Castillo v. McFadden, 399 F.3d 993, 998 n.3 (9th Cir.), cert. denied 126 S.Ct. 348 (2005) (same).

To properly exhaust claims raised in a state PCR, a Petitioner must file a timely petition for review in the Arizona Court of Appeals.  State law provides in relevant part that "[w]ithin thirty days after the final decision of the trial court on the petition for post-conviction relief . . . any party aggrieved may petition the appropriate appellate court for review of the actions of the trial court."  Ariz. R. Crim.P. 32.9(c).  A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  See Tamalini v. Stewart, 249 F.3d 895, 898-99 (9th Cir. 2001);

1   Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1472-73 (9th Cir. 1994), overruled on other

2   grounds by Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).  The exhaustion

3   requirement will not be met where the petitioner fails to fairly present his claims.  See

4   Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

5          The federal court will not consider claims not fairly presented unless the petitioner can

6   demonstrate that a miscarriage of justice would result, or establish cause for his

7   noncompliance and actual prejudice.  See Schlup v. Delo, 513 U.S. 298, 321 (1995);

8   Coleman, 501 U.S. at 750-51; Murray v. Carrier, 477 U.S. 478, 495-96 (1986).  To establish

9   cause, a petitioner must establish that some objective factor external to the defense impeded

10  her efforts to comply with the state's procedural rules.  Id.  The following objective factors

11  may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal

12  basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance

13  of counsel.  Id.   To establish prejudice, a prisoner must demonstrate that the alleged

14  constitutional violation "worked to his actual and substantial disadvantage, infecting his

15  entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170

16  (1982). Regarding the "miscarriage of justice," the Supreme Court has made clear that a

17  fundamental miscarriage of justice exists when a Constitutional violation has resulted in the

18  conviction of one who is actually innocent.  See Murray, 477 U.S. at 495-96.  To establish

19  a "fundamental miscarriage of justice" resulting in the conviction of one who is actually

20  innocent, a state prisoner must establish that it is more likely than not that no reasonable juror

21  would have found him guilty beyond a reasonable doubt in light of new evidence.  Schlup,

22  513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B).

23         If a petition contains claims that were never fairly presented in state court, the federal

24  court must determine whether state remedies remain available to the petitioner.  See Harris

25  v. Reed, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring); Rose, 455 U.S. at 519-20.

26  Generally, any claim not previously presented to the Arizona courts is procedurally barred

27  from federal review because any attempt to return to state court to properly exhaust a current

28  habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303

F.3d 975, 987 (9th Cir. 2002); State v. Mata, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time barred. Beaty, 303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

If the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. See Teague v. Lane, 489 U.S. 288, 298-99 (1989); White v. Lewis, 874 F.2d 599, 602-05 (9th Cir. 1989).

**Merits Analysis**

**AEDPA Standard of Review**

Pursuant to the AEDPA[4], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

---

[4] Antiterrorism and Effective Death Penalty Act of 1996.

decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Taylor, 529 U.S. at 405-06. "A state court's decision can involve an 'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

## LAW AND APPLICABLE FACTS

**Petitioner's Claims Two, Claim Three (Subpart 1), and Claim Five
Are Procedurally Defaulted.**

**Petitioner's Claim One, Claim Three (Subpart 2), and Claim Four Are Meritless**

A.    Claim One (prosecutor breached plea agreement).

Petitioner asserts that the prosecutor breached the plea agreement, because the former prosecutor assigned to the case "verbally [stat]ed that the State would follow the presentence report recommendation at sentencing." (Doc. #3, at 4.) At sentencing, despite the presentence report recommendation that the judge impose a term of imprisonment for "more than the presumptive," the new prosecutor argued for the maximum, 10 year sentence on each count. (Id.) Petitioner first made this claim in his PCR, and attached thereto an affidavit from his attorney, stating, *inter alia*, that the original prosecutor assigned to the case had stated to him that his position would be "to follow the recommendation of the pre-sentence report." (Doc. #13, Exh. M [Exh. 13, ¶4].)

In response to Petitioner's claim, the State submitted an affidavit from the original prosecutor assigned to the case, in which the prosecutor stated *inter alia*, that his "recollection regarding [his] conversation with [Petitioner's counsel] were general discussions on what [he] generally does when a presentence report is written," and that he did "not recollect any promises being made to follow the recommendation of the pre-sentence report." (Doc. #13, Exh. N [Exh. B].) In its response, the State also emphasized that: (1) no such promises were contained in the written plea agreement; (2) no such promises were discussed at the change of plea proceeding; and (3) at the change of plea, petitioner

specifically denied that any promises were made to induce his plea, other than those contained in the plea agreement.  (Id., at 8.)

The trial court denied the claim finding that "no colorable claim has been presented." (Doc. #13, Exh. O.)  Such a summary denial is considered a decision on the merits. Greene v. Lambert, 288 F.3d 1087-88 (9th Cir. 2002).  When a state court issues such a summary denial, the reviewing federal court conducts "an independent review of the record" and determines "whether the state court clearly erred in its application of controlling federal law." Luna v. Cambra, 306 F.3d 954, 960-61 (9th Cir.), as amended, 311 F.3d 928 (9th Cir. 2002).

The seminal Supreme Court case relevant to this issue is Santobello v. New York, 404 U.S. 257 (1971).  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262.  A petitioner has a high burden of establishing a right to an evidentiary hearing on such a claim:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (citations omitted).

In Blackledge, the Court held that, "[i]n light of the nature of the record of the proceeding at which the guilty plea was accepted, and of the ambiguous status of the process of plea bargaining at the time the guilty plea was made," the petitioner had set forth specific grounds entitling him to an evidentiary hearing on the issue of whether his plea was knowing and voluntary. Id. at 76.  In that case, as distinguished from Petitioner's case, the plea proceedings were not transcribed, so that "any promises [could] be easily ascertained by reference to the record itself." Id. at 79-80.  In Petitioner's case, a transcript was made, and reflects that Petitioner denied on the record that any promises were made, other than the promises contained in the written plea agreement.  (Doc. #13, Exh. D, at 7.)  Petitioner did

1  not object at sentencing when the prosecutor recommended a 10 year sentence, to run

2  concurrently with his sentence in the companion matter.  (Id. at 9, 10-37.)

3      When plea negotiations are discussed on a transcribed record, an evidentiary hearing

4  is warranted only in the "most extraordinary circumstances."  Blackledge, 404 U.S. at 80 n.

5  19; see Garci v. Johnson, 991 F.2d 324, 326 (6th Cir. 1993) ("When a defendant subsequently

6  brings a federal habeas petition challenging his plea, the state generally satisfies its burden

7  by producing a transcript of the state court proceeding.  The factual findings of a state court

8  that the plea was proper generally are accorded a presumption of correctness."); Watts v.

9  United States, 841 F.2d 275 (9th Cir. 1988); United States v. Castello, 724 F.2d 813, 815 (9th

10  Cir. 1984) ("The court was entitled to credit [the defendant's testimony at the taking of the

11  plea] over her subsequent affidavit."); Farrow v. United States, 580 F.2d 1339, 1361-62 (9th

12  Cir. 1978) (denying habeas relief where the defendant's allegation that his counsel promised

13  him a lenient sentence was "wholly unsubstantiated and refuted by the record").

14      Furthermore, the prosecutor's sentencing recommendation is arguably consistent with

15  the recommendation of the presentence report writer in this regard:  the presentence report

16  writer recommended an aggravated sentence in the Theft case, which, as set forth in

17  paragraphs one and two of the plea agreement, was a sentence of more than five years'

18  imprisonment, up to ten.  The prosecutor's recommendation of ten years was within that

19  range.  Furthermore, the presentence report writer recommended that the sentence in the

20  Theft case run consecutive to the sentence Petitioner would receive in the Fraudulent

21  Schemes case, which is inconsistent with the stipulation in the plea agreement that the

22  sentences run concurrently. (Doc. #13, Exh. F, at 6.)  If this recommendation were followed,

23  Petitioner would have received between a 10 and 22.5 year sentence.[5] Thus, the prosecutor's

24

25

---

26      [5]Both of the plea agreements stipulated to a sentence of no less than five years. (Doc.

27  #13, Exh. D, at 2; Exh. F, at 12.)  The maximum sentence set forth therein was ten years in
   the Theft case, and 12.5 years in the Fraudulent Schemes case; thus rendering Petitioner's

28  ultimate exposure, if a consecutive sentence was imposed, to 22.5 years imprisonment.  (Id.)

1    recommendation was at least consistent, and ultimately more favorable than the

2    recommendation of the presentence report writer.

3         Finally, it is difficult to comprehend how Petitioner's plea was "induced" by a

4    promise by the prosecutor to adopt the recommendation of the presentence report writer.  A

5    plea is induced if it "rests in any significant degree on a promise or agreement of the

6    prosecutor."  Santobello, 404 U.S. at 262. The presentence report was prepared after the

7    change of plea proceeding; thus, Petitioner could not have known at the time of his plea what

8    the sentencing recommendation would be.  The recommendation could have been for

9    maximum, consecutive sentences, which the prosecutor could not have adopted without

10   violating the agreement she had reached with Petitioner that the sentences run concurrent.

11   Essentially, Petitioner could not have rested his decision to enter his plea agreement in any

12   significant degree on a promise based upon a future, uncertain contingency.

13        The trial court's summary denial of Petitioner's "breach of plea agreement" claim was

14   not contrary to, or an unreasonable application of Supreme Court precedent.

15        B.    Ground Two (use of "value" as an aggravating circumstances).

16        Petitioner raised this issue as ground G in his Rule 32 petition, and ground E in his

17   Petition for Review.  In his Rule 32 petition, he argued that value is an element of the crime

18   of Theft according to the Arizona statute defining the offense, A.R.S. §13-1802(E): "Theft

19   of property or service with a value of twenty-five thousand dollars or more is a Class 2

20   felony."  Petitioner then cites a state court case that held that an element of a crime cannot

21   be used to aggravate a sentence pursuant to A.R.S. §13-702 unless it "rises to a level beyond

22   that which is merely necessary to establish an element of the underlying crime."  (Doc. #13,

23   Exh. M, at 16.)

24        Petitioner reiterated the same issue in his Petition for Review, but added an argument

25   that the "Double Jeopardy Clause prohibits courts from punishing defendants twice for the

26   same offense."  (Doc. #13, Exh. Q, at 22-23.)  In his habeas petition, he frames the issue as

27   a violation of his right to due process and protection against double jeopardy under the Fifth,

28   Sixth and Fourteenth Amendments.  (Doc. #1, at 7.)

1    Petitioner did not state the federal basis for his claim in his initial Rule 32 petition.

2    He referred to state cases and the Arizona statute defining the offense.  Petitioner, therefore,

3    did not fairly present a federal claim to the Arizona trial court in his first post-conviction

4    relief petition.   Gray v. Netherland, 518 U.S.152, 162-63 (1996) ("[F]or purposes of

5    exhausting state remedies, a claim for relief in habeas corpus must include reference to a

6    specific federal constitutional guarantee, as well as a statement of the facts that entitle the

7    petitioner to relief."); Hiivala v. Wood, 195 F.3d 1098,1106 (9th Cir. 1999) (holding that,

8    when the petitioner failed to cite federal case law or mention the federal Constitution in his

9    state court briefing, he did not alert the state court to the federal nature of his claims).

10   Petitioner did not therefore exhaust this claim because he did not present the legal basis of

11   his claim in "one complete round of the State's established appellate review process."

12   O'Sullivan, 526 U.S. at 845.

13       C.     Ground Three:

14   Subpart 1 (inaccurate information at sentencing-religion).

15       Petitioner argues in his habeas petition memorandum that he was sentenced based

16   upon inaccurate information, namely that (1) he had utilized religion to manipulate his

17   victims, and that (2) the presentence report writer had interviewed him and concluded that

18   he had not demonstrated a lack of remorse for his harmful acts.  (Doc. #3, at 7.)  Although

19   he raised the issue of having been sentenced based upon inaccurate information in his Rule

20   32 petition, he did not include the allegation that he was sentenced based upon the (false) fact

21   that he had utilized religion to manipulate the victims.  Thus, this part of his claim is not

22   exhausted.  Although Petitioner did raise the issue in his Petition for Review to the Arizona

23   Supreme Court, he was required to present the claim to each appropriate state court,

24   including the trial court.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at

25   845.

26   Subpart 2 (inaccurate information at sentencing-presentence report).

27       Petitioner claims that the presentence report writer "'inferred that Petitioner was

28   interviewed by her when she concluded in the presentence report that the defendant's

statements regarding his offenses do not show concern for his victims, nor do they suggest he has learned a harsh lesson regarding the consequences of his harmful acts." (Doc. #3, at 7.) This claim (and the federal basis for the claim) was raised in his PCR and his Petition for Review, and is therefore exhausted. (Doc. #13, Exh. M, at 14-15; Exh. Q, at 17-19.) The trial court dismissed the PCR based on the failure of Petitioner to present a colorable claim.

Petitioner cites United States v. Tucker in support of his argument that a defendant has a due process right to be sentenced based upon accurate information. 404 U.S. 443 (1972). The Supreme Court in that case affirmed the appellate court's order to remand for resentencing a case in which the court determined that the sentence was "founded at least in part upon misinformation of constitutional magnitude." Id. at 447. The trial judge in Tucker sentenced him based upon three previous felony convictions, two of which were later determined to be constitutionally invalid. Id. at 444. The Court emphasized the magnitude of the misinformation:

> For we deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude. As in Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. . . .The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him. Yet it is now clear that two of those convictions were wholly unconstitutional. . .

Id. at 447 (citations, footnote omitted).

In the instant case, the presentence report writers "inference" to the court that Petitioner had been interviewed and had not shown remorse for his acts, was clarified by defense counsel at the sentencing hearing: "[s]o when you get a presentence report that's so full of errors from a presentence investigator that didn't even take the time to interview either myself or Mr. Castle, even though we were placing calls to her on multiple occasions, there's a problem with that process . . ." (Doc. #13, Exh. G, at 31.) Petitioner also, during his elocution, demonstrated remorse and apologized to the victims. (Id., at 32-33.) The prosecutor set forth five statutory basis for aggravation of sentence, that did not include

1  Petitioner's lack of remorse.  (Id., at 21-22.)  Furthermore, the trial court did not list lack of

2  remorse as a factor it considered in aggravation.

3      Thus, Petitioner's case is wholly distinguishable from the Supreme Court precedent

4  as outlined in <u>Tucker</u>.  The trial court's dismissal of Petitioner's claim was not contrary to,

5  or an unreasonable application of, clearly established federal law as determined by the United

6  States Supreme Court.

7      D.    <u>Ground Four</u>  (use of religion as a sentencing factor):

8      Petitioner argues that his due process rights were violated when the court based his

9  sentence in part on a "religious factor." (Doc. #3, at 16-17.)  He cites the First Amendment

10  and the Establishment Clause in support of this claim.  (<u>Id.</u>)   Petitioner raised this claim in

11  his PCR as both a First Amendment Establishment Clause claim, and the First Amendment's

12  right to free association.  (Doc. #13, Exh. M, at 16-17.)  Petitioner reiterated this claim in his

13  Petition for Review to the Arizona Court of Appeals.  (<u>Id.</u>, Exh. Q, at 21-22.)  This claim is

14  therefore exhausted.

15      It is axiomatic that the Establishment Clause prohibits "the establishment of a state

16  church or a state religion," and also laws that establish "a step that could lead to such

17  establishment and hence offend the First Amendment."  <u>Lemon v. Kurtzman</u>, 403 U.S. 602,

18  612 (1971).  The Establishment Clause also protects the "free exercise" of religion.  <u>U.S.</u>

19  <u>Const. amend 1</u>.  The Court in <u>Lemon</u> emphasized the importance of "draw[ing] lines with

20  reference to the three main evils against which the Establishment Clause was intended to

21  afford protection: sponsorship, financial support, and active involvement of the sovereign in

22  religious activity." <u>Id.</u> at 612 (citation omitted).  A three part test was set forth by the Court

23  to be utilized in analyzing alleged Establishment Clause violations: "First [1], the statute

24  must have a secular legislative purpose; second [2], its principal or primary effect must be

25

26

27

28

1   one that neither advances nor inhibits religion . . .; finally [3], the statute must not foster 'an

2   excessive government entanglement with religion[6].'" Id., at 612-13 (citation omitted).

3          In the instant case, the trial court's finding that Petitioner had not presented a

4   colorable claim on this issue was not contrary to, or an unreasonable application of, clearly

5   established federal law as determined by the United States Supreme Court as set forth above.

6   The prosecutor argued at sentencing that Petitioner had used religion as a subterfuge to gain

7   the victims' trust, and the sentencing judge referred to this when discussing Petitioner's

8   abuse of his position of the trust of his elderly victims.  This comment does not rise to the

9   level of the "establishment" of religion, or an interference with the "exercise" of religion, as

10  contemplated by the constitutional prohibition. The analysis would be the same if Petitioner

11  had pretended to be a minister, or pretended to be blind, or engaged in any other deception

12  to gain the trust of the victims.  In addition, Petitioner remained silent in the face of this

13  accusation by the prosecutor, and then by the judge, when he had the opportunity to dispute

14  it.

15         If there were error, Petitioner does not demonstrate prejudice, as the sentencing judge

16  found other aggravating factors supported by the record:  substantial financial loss, age of

17  victims, use of accomplices, and role in the offense.  The court may not grant habeas relief

18  upon the finding of error, unless the error had a "substantial and injurious" effect on the

19  factfinder's decision. Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  Once the trial court

20  found one permissible aggravating factor, "the Sixth Amendment permits the sentencing

21  judge to find and consider additional factors relevant to the imposition of a sentence up to

22  the maximum prescribed in that statute." State v. Martinez, 210 Ariz. 578, 585 (2005).

23

24

---

25         [6]The first prong of this test was modified narrowly by the Supreme Court in Agostini

26  v. Felton:  in examining governmental purpose, the court should evaluate the effect of the
    governmental activity, "(I) whether governmental aid results in government indoctrination;

27  (ii) whether recipients of the aid are defined by reference to religion; and (iii) whether the aid

28  creates excessive government entanglement with religion."  521 U.S. 203, 208-09 (1997).

1        E.     Ground V (sentenced based upon factors not alleged in indictment).

2       Petitioner did not raise this claim in his initial PCR, but raised it in a second,

3 successive Notice of Post-Conviction Relief, in which he claimed, pursuant to Rule 32.1(g)[7],

4 Ariz.R.Crim.P., that a significant change in the law entitled him to relief.  (Doc. #13, Exh.

5 S.)  Specifically, he claimed that, in Cunningham v. California, 549 U.S. 270 (2007) the

6 "U.S. Supreme Court inferred that Arizona's determinate sentencing statutes, A.R.S. 13-7-1

7 et seq., were unconstitutional prior to 2006, and before the Arizona Legislature amended the

8 DSL via Sessions Laws 2006, Ch. 148, Section 1; more specifically A.R.S. 13-702(B)."

9 (Doc. #13, Exh. S at 5.)  Petitioner also conceded the fact that Blakely "was held not to be

10 retroactively applied by the Arizona courts," but argued that Cunningham "ha[d] not been

11 precluded from retroactive application."   (Id.) The trial court dismissed the notice,

12 concluding that Blakely did not demonstrate  a significant change in the law entitling him to

13 relief, but that Petitioner had in any event, "consented, in his plea agreement, to judicial

14 factfinding for sentence enhancement."  (Doc. #13, Exh. T.)

15       It is unclear why the trial court referenced Blakely, and not Cunningham, in its order.

16 In their Answer, Respondents do not address the trial court's complete misapprehension of

17 the legal basis for Petitioner's claim.  In Cunningham, however, the Supreme Court merely

18 applied Blakely jurisprudence to support its conclusion that California indeterminate

19 sentencing laws violated the Sixth Amendment because they permitted the sentencing judge,

20 instead of a jury, to find facts (other than a prior conviction) to support a sentence in excess

21 of the statutory maximum. 549 U.S. at 293.   Blakely was decided prior to Petitioner's

22 sentencing.  Thus, whether the trial court based its decision upon the holding of Blakely or

23

24

25       [7]Rule 32.2, Ariz.R.Crim.P., bars a successive petition, unless a defendant can

26 demonstrate that the claim is not procedurally barred.  Rule 32.1(g) provides an exception
to the procedural bar when a defendant's claim is based on a "significant change in the law

27 that if determined to apply to [the] defendant's case would probably overturn the defendant's

28 conviction or sentence[.]"

1  <u>Cunningham</u>, neither represented a significant change in the law applicable to defendant's

2  case that would probably overturn the defendant's conviction or sentence.

3     The trial court's dismissal of the notice for failing to demonstrate a significant change

4  in the law as required by Rule 33.1(g) was therefore not contrary to, or an unreasonable

5  application of, clearly established federal law as determined by the United States Supreme

6  Court.  This was an adequate and independent state ground for denying Petitioner's claim,

7  and therefore, federal habeas review is barred.  <u>See</u> <u>Stewart v. Smith</u>, 536 U.S. 856, 860

8  (2002) ("Rule 32.2(a)(3) determinations are independent of federal law because they do not

9  depend upon a federal constitutional ruling on the merits."); <u>Poland v. Stewart</u>, 169 F.3d 573,

10  584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction . . . to review state court

11  applications of state procedural rules.").

12     Even if Petitioner were to demonstrate that the trial court's dismissal was not based

13  upon an adequate and independent state procedural ground, the trial court's conclusion that

14  Petitioner waived his right to have a jury make any findings necessary for an aggravated

15  sentence by agreeing to judicial fact-finding in his plea agreement, amounts to an alternative

16  decision on the merits of the claim.  An alternative ruling on the merits does not vitiate a

17  finding of procedural bar.[8] The court's reasoning however, does support an alternative

18  finding that, even in the event his claim was not procedurally defaulted, Petitioner suffered

19  no prejudice, as his claim fails on the merits.

20     In both his plea agreement and during his change-of-plea colloquy with the court,

21  Petitioner agreed to waive his right to a jury determination of aggravating factors, and

22  consented to judicial factfinding by a preponderance of the evidence.  Because Petitioner

23  pled guilty, "the State [was] free to seek judicial sentence enhancements so long as the

24  [Petitioner] stipulate[d] to the relevant facts or consent[ed] to judicial factfinding."  <u>Blakely</u>,

25  542 U.S. at 310.

26

27  _____

28     [8]<u>See</u> <u>Comer v. Schriro</u>, 480 F.3d 960, 964 n. 6 (9th Cir. 2007) ("A state court . . . does
    not vitiate a procedural bar ruling by addressing the merits of a claim in the alternative.").

1

**CONCLUSION**

2       As Petitioner has failed to fairly present Claim Two, Claim Three (Subpart 1), and

3   Claim Five in the Arizona courts, Petitioner has denied the state courts a full and fair

4   opportunity to pass on them, and he has therefore, not exhausted these claims.  These claims

5   are procedurally defaulted because it is too late for Petitioner to present these claims in state

6   court.  See Ariz.R.Crim.P. 31.3, 32.2(a) and 32.4 (setting forth time limits on raising issues

7   on direct appeal and in post-conviction relief proceedings).  Because it is now too late for

8   Petitioner to return to state court to present these claims, therefore, they are procedurally

9   defaulted.

10       In order to excuse procedural fault, a Petitioner must show the following: (1) cause:

11   an impediment preventing him from complying with the state's procedural rules, Carrier, 477

12   U.S. at 488, or (2) prejudice: any constitutional violation so basic as to infect the entire

13   proceeding with error, Frady, 456 U.S. at 170, or (3) fundamental miscarriage of justice: that

14   no reasonable juror could find him guilty, Schlup, 513 U.S. at 327.  Petitioner makes no such

15   showing, and these claims are therefore barred from federal habeas review.

16       Petitioner's Claim One, Claim Three (Subpart 2) and Claim Four are without merit,

17   as they fail to demonstrate that the state court decision was contrary to, or an unreasonable

18   application of, clearly established federal law as determined by the United States Supreme

19   Court, or based on an unreasonable determination of the facts in light of the evidence

20   presented in the state court proceeding.

21       **IT IS THEREFORE RECOMMENDED:**

22       That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1)

23   be **DENIED** and **DISMISSED WITH PREJUDICE**;

24       This recommendation is not an order that is immediately appealable to the Ninth

25   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

26   Appellate Procedure, should not be filed until entry of the district court's judgment.  The

27   parties shall have ten days from the date of service of a copy of this recommendation within

28   which to file specific written objections with the Court.  See, 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 6(a), 6(b) and 72.  The objections shall not exceed 15 pages in length.  Thereafter, the parties have ten days within which to file a response to the objections.  The responses shall not exceed 10 pages in length.  Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation.  See Fed. R. Civ. P. 72.

DATED this 10th day of February, 2009.


Michelle H. Burns
United States Magistrate Judge

- 21 -